20 Md. App. 484 (1974)
316 A.2d 322
MONTGOMERY COUNTY, MARYLAND
v.
CITIZENS BUILDING AND LOAN ASSOCIATION, INC. ET AL.
No. 558, September Term, 1973.
Court of Special Appeals of Maryland.
Decided March 15, 1974.
The cause was argued before THOMPSON, GILBERT and MOORE, JJ.
Joseph Ferrante, Jr., Assistant County Attorney for Montgomery County, with whom were Richard S. McKernon, County Attorney for Montgomery County, and Robert G. Tobin, Jr., Deputy County Attorney for Montgomery County, on the brief, for appellant.
*486 Joe M. Kyle for appellees.
THOMPSON, J., delivered the opinion of the Court.
This case concerns the validity of an ordinance prohibiting roof signs, under Article 23 of the Declaration of Rights of the Maryland Constitution and the Fourteenth Amendment to the Constitution of the United States.
Montgomery County, appellant, sought, in four equity cases in the Circuit Court for Montgomery County, a mandatory injunction for the removal of roof signs belonging to the four appellees. The cases were consolidated for trial. Judge John F. McAuliffe denied the requested injunctions on the basis that the ordinance was unconstitutional. The case, which was tried on stipulations, was summarized in part by the Judge as follows:
"Ordinance No. 6-115 of the County Council for Montgomery County, Maryland, sitting as the District Council, rewrote the section of the Montgomery County zoning laws which pertain to signs. Public hearings on the proposed ordinance were held on November 29, 1967, February 7, 1968 and April 24, 1968, and the 267 page transcript of that testimony is in evidence in this case as Plaintiff's Exhibits 1A, 1B, and 1C. The report of the Technical Staff of the Maryland-National Capital Park & Planning Commission dated November 7, 1967 is also in evidence as Plaintiff's Exhibit 3, and the recommendation of the Planning Board dated November 30, 1967 is in evidence as Plaintiff's Exhibit 4. The ordinance was adopted on October 1, 1968, and is now codified as Sections 59-80 through 59-113 of the Montgomery County Code, 1972 edition.
"It should also be noted that by Ordinance No. 6-114 there was established a Sign Review Board, and this ordinance, as subsequently amended, is now codified as Sections 59-114 through 59-119 of the Montgomery County Code, 1972 edition.

*487 "In rewriting the Zoning Ordinance with respect to signs, the District Council limited the size, shape and location of many types of signs, generally providing for separate criteria according to whether the sign was to be located in a residential, commercial or industrial area or zone, but also providing for certain general restrictions and standards. Particularly pertinent to this case are the provisions of paragraph 3 (b) (5) of Ordinance 6-115, now codified as Section 59-81 (C) (2) e., providing that in commercial zones and commercial areas, `Roof signs shall not be allowed.'
"A similar limitation applies in industrial zones and industrial areas, by virtue of the provisions of Section 59-81 (D) (2) e., but in the particular context of this case the previous section is relevant by virtue of the stipulation of the parties that the signs of these defendants are entirely located within commercial zones and commercial areas.
"Section 59-84 of the Montgomery County Code, 1972 edition, provides for the removal of nonconforming signs in accordance with a schedule which is based upon the original cost of the sign. The parties agree that according to this schedule, the allowable continuance period for each sign involved in this case has expired.
* * *
"These defendants have not challenged the general authority of the District Council in the exercise of the police power in zoning matters. Indeed, it is clear that the Montgomery County Council possesses broad police powers, Montgomery Citizens League v. Greenhalgh, 253 Md. 151 (1969), Scull v. Montgomery Citizens, 249 Md. 271 (1968). It is equally apparent that the special exercise of the police power in zoning cases has been given the District Council by virtue of the Maryland-Washington Regional District Act, and we *488 further conclude that the grant of authority in the Maryland-Washington Regional District Act is sufficiently broad to include regulation of signs.
* * *
"It is equally clear that the questions of public necessity and the reasonableness of the means employed by the legislative body to accomplish a necessary purpose are basically matters for the legislature, and not for the Courts, and that if such questions are fairly debatable, the Courts will not interfere with the action of the legislative bodies. Furthermore, where the legislative judgment is drawn in question, the judicial inquiry must be restricted to the issue of whether any state of facts either known or which could reasonably be assumed affords support for the action of the legislature. United States v. Caroline Products Co., 304 U.S. 144.
* * *
"Our review of the entire transcript of proceedings before the District Council, as well as the other exhibits of record, leads us to conclude that while a sufficient basis may have existed for the adoption of an ordinance which would reasonably limit the size and placement of signs within the County, the record is devoid of any evidence of a public necessity for the total exclusion of roof signs for the protection of the health, safety or general welfare of the public, and consequently so much of the Ordinance as may exclude roof signs is invalid.
"We have searched in vain to find any testimony that roof signs pose any particular hazard to traffic, or are otherwise potentially injurious. We note that roof signs must comply with other sections of the Montgomery County Code relating to fire safety, structural integrity, etc., and by the *489 stipulation of the parties, it is noted that these signs fully comply with all such requirements. Furthermore, the parties have stipulated that these signs do not infringe upon or overhang any public rights of way, and in short there is nothing about the signs involved in this case, or roof signs in general, which seems to pose any threat to the safety or health of the citizens of the County."
Upon our review of the record, we agree with the trial judge. Montgomery County, on appeal, points to the occasions, significantly sparse, when roof signs were mentioned at the ordinance hearings. From this evidence, the County argues that the prohibition of § 59-81 (c) (2) e is valid because (1) roof signs are often employed to display advertising not directly associated with an identification of the establishment on which they are located and (2) roof signs carry with them the potential for distracting motorists.
As to the first argument, § 59-104 of the Montgomery County Code specifically prohibits utilization on improved property of "outdoor advertising structures, billboards and poster panels" which advertise products or businesses not connected with the property. As the trial judge commented, the billboard proscription would seem to effectively resolve this first argument. As to the second argument, there is nothing in the record to indicate roof signs are any more distracting to motorists than flat wall, projecting, freestanding or marquee signs of equal height, which are permitted in commercial zones and areas by § 59-81 (c) (2) a-d.
There was no evidence in the record of any distinction between roof signs and other signs, except for conclusory statements, from a few persons, that roof signs are aesthetically less pleasing than other signs. The Maryland Court of Appeals has specifically held that roof signs cannot be prohibited upon the basis of aesthetics alone. Mayor and City Council of Baltimore v. Mano Swartz, Inc., 268 Md. 79, 86, 299 A.2d 828 (1973). That case, however, did explicate that an ordinance, if constitutionally valid on other grounds, *490 would not be invalidated merely because it was also designed to create something aesthetically pleasing. Id. at 91-92. It was stipulated, that all of the signs involved in the instant case are located within commercial areas and zones; that there are no structural or design defects; and that no sign infringes on a public right of way. We, like the chancellor, are unable to see any non-aesthetic relation to the general welfare which would support the police power prohibition of roof signs. Although it is true that the ordinance in the instant case, unlike the one involved in Mayor and City Council of Baltimore v. Mano Swartz, Inc., supra, did not specifically recite that the purpose of prohibiting roof signs was aesthetic, we do not regard the distinction of any importance where a court can ascertain no other reason for the prohibition. We hold the ordinance unconstitutional insofar as it prohibits roof signs.
Montgomery County also contends that the appellees failed to exhaust their administrative remedies. As previously mentioned, the ordinance under scrutiny created a Sign Review Board, to which these appellees failed to apply for a special exception;[1] therefore, the County contends that appellees have waived their right to raise constitutional objections in these proceedings. The trial judge ruled that the appellees were not required to exhaust administrative remedies because this challenge was upon the act as written and not as applied; he relied on Schneider v. Pullen, 198 Md. 64, 69, 81 A.2d 226 (1951). In addition, the trial judge found that the ordinance failed to provide any procedure for a special exception for roof signs; this we hold to be dispositive of the argument.
We further particularize our statutory predicates: Montgomery County Code, Section 59-117 provides as follows:
"The sign review board is authorized, at the request of the director, any applicant or on its own motion, to review any application for a sign permit, *492 and to make recommendations to the director as to whether or not the sign as proposed complies with the requirements and purposes of this chapter. The board may grant variances from sign regulations under the terms and conditions authorized by specific provisions of the regulations and further may grant a variance where the strict application of the sign regulations would result in peculiar and unusual practical difficulties to, or exceptional or undue hardship upon, the owner of the property or owner of such sign; provided, that such variance can be granted without substantial impairment of the intent, purpose and integrity of the regulations and of this chapter. This provision shall not permit the board to grant a variance allowing any prohibited sign." (Italics added)
Section 59-85 details seven categories of "prohibited signs," but roof signs are not included in the list. Insofar as relevant to the instant case, roof signs are expressly prohibited by § 59-81 (c) (2) e in the following language: "ROOF SIGNS. Roof signs shall not be allowed."
The language of the ordinance makes clear to us that the Sign Review Board has no discretion to permit a variance for hardship cases involving any prohibited signs, to include roof signs. Although it is true, as argued by Montgomery County, roof signs are not prohibited by Section 59-85, entitled Prohibited signs, they are clearly prohibited by the terms of Section 59-81 (c) (2) e. We note, particularly, that the restriction on the power of the Sign Review Board does not make reference to § 59-85 nor does it refer to prohibited signs in capital letters. The County Council was content to employ general language to preclude its Sign Review Board from granting "a variance allowing any prohibited signs." We are unable to give effect to a merely semantic difference between a sign which is "prohibited" by the express language of the ordinance and one which is "not allowed" by the express language of the same integrated ordinance. When the intent of the legislative body is expressed in language as clear as this, there is no need to resort to rules *492 of statutory construction. Mayor and City Council of Baltimore v. Mano Swartz, Inc., supra at 86; Smith v. Higinbothom, 187 Md. 115, 125, 48 A.2d 754 (1946).
Decrees affirmed.
Appellant to pay the costs.
NOTES
[1] One appellee, who was refused a special exception by the Board, did not appeal.